IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE MAE HAMMONDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-CV-01088-DRB |
| ) | [WO] |
| JO ANNE B. BARNHART ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Willie Mae Hammonds ("Hammonds") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq*. Considered examination of the record, briefs, and the relevant law inform the court's conclusion that the Commissioner's decision should be affirmed.

**I. PROCEDURAL HISTORY**

Hammonds' application on December 17, 2002, alleged the onset of disability on August 1, 2002. Denied administratively and represented by counsel, Hammonds received a requested hearing before an Administrative Law Judge ("ALJ"). Upon receipt of additional evidence, the ALJ rendered an unfavorable decision.

Hammonds, age 51 at the time of the hearing, testified that she has a sixth grade education and is able to read and write. Because she has no past relevant work experience, the ALJ found that Hammonds has not engaged in substantial gainful work since the alleged onset date of disability. The ALJ determined that Hammonds has diabetes, hypertension, degenerative disc disease, osteoarthritis

and leg and back pain. Although he described all of these conditions as "severe" impairments, after considering them individually and in combination, he concluded that they did not meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Appendix 1 to Subpart P. Hammonds' allegations of pain and functional limitations were deemed "not credible." Acknowledging the absence of any "past relevant work experience", the ALJ proceeded to step five of the five-step sequential evaluation process. After considering Hammonds' age, education, and work experience, in reliance on the Medical Vocational Guidelines, the ALJ found her able to perform a full range of light work and, consequently, not disabled under the Social Security Act.[1]

In response to the ALJ's adverse decision on March 9, 2004, Hammonds presented to the Appeals Council purportedly "new and material" evidence from her treating physician, Dr. Riley, who rendered opinions to the ALJ regarding Hammonds' residual functional capacity; Dr. Riley continued to opine that Hammonds is disabled and unable to perform any type of employment. In reliance on these opinions, Hammonds argued, *inter alia*:

> In his decision, the ALJ noted that prior to rendering his decision, the ALJ contacted the claimant's representative regarding his concerns over Dr. Riley's questionnaire...The ALJ was informed that appropriate steps were taken to obtain information from Dr. Riley regarding the ALJ's concerns. Enclosed...are the statements obtained from Dr. Riley regarding the authenticity of all documents in question and the consistency of Dr. Riley's statements...The claimant respectfully submits that these enclosed documents support Dr. Riley's original questionnaire and therefore the ALJ committed reversible error in failing to give Dr. Riley's questionnaire controlling weight.[2]

The Appeals Council did consider this information but disagreed with Hammonds' assessment

---

[1] R. 21, 24-28. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[2] R. 223.

that it provided a basis for changing the ALJ's decision. Finding no reason to review the ALJ's decision, the Appeals Council denied Hammonds' request. Consequently, the Appeals Council's order denying review is a "final decision" of the Commissioner under 42 U.S.C. §405(g). This appeal to the United States District Court is timely and proceeds pursuant to 42 U.S.C. §405(g) and 28 U.S.C. §636(c).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*,

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). The case may be remanded to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

In deciding whether the Commissioner erred in denying review of the ALJ's decision, the court also must consider additional evidence considered and made a part of the record by the Appeals Council in denying requested review.  The Appeals Council will review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (*en banc*). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Parker*, 788 F. 2d at 1520.

### III.  ISSUES

Hammonds specifies four issues for review:

1. Whether the ALJ's finding that [she] retains the residual functional capacity to perform light work is based on substantial evidence;

2. Whether the ALJ erred by failing to properly consider the side effects of [her] medications;

3.       Whether the ALJ erred by relying solely on the Medical Vocational Guidelines, in the presence of non-exertional impairments; and

4.       Whether the new evidence submitted to the Appeals Council warrants remand.

## IV.  DISCUSSION

### A.  Assessment of RFC for Full Range of Light Work

Assessment of RFC falls squarely within the ALJ's province, but it must be based upon all relevant evidence of the claimant's ability to work despite impairments. *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997); *SSR 96-5p*, 1996 SSR LEXIS 2, *5-*7 ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."); *SSR 96-6p* (Although ALJ responsible for assessing RFC, the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians...RFC assessments by State agency medical...consultants or other program physicians...are to be considered and addressed in the decision as medical opinions from nonexamining sources...").

Hammond argues that no substantial evidence supports the ALJ's assessment of her RFC for a full range of light work because the ALJ "rejected the only RFC assessment of record completed by a treating physician", Dr. Clark Riley, and also "failed to mention [her] spinal stenosis with possible neuro-claudication...."[3] . Analysis of the record readily buttresses the court's rejection of this argument.

The ALJ "afforded no weight" to Dr. Riley's opinions in the Physical Residual Functional

---

[3]*Pl.'s Br.* at 3-7.

Capacity Questionnaire dated October 8, 2003 ("Questionnaire") for reasons which are clearly articulated, substantiated, and adequate:

> *The questionnaire was not fully completed.* Approximately one-third (1/3) of the questions were ignored and left blank. The undersigned finds *the omitted questions represent some of the most important questions in the questionnaire, as they relate to the assessment of the claimant's physical residual functional capacity*. Dr. Riley failed to describe the nature, frequency and length of contact (question #1), list a prognosis (question #3), identify clinical findings and objective signs (question #6), describe the claimant's treatment and response to same (question #7), describe the degree that the claimant is able to tolerate work stress (question #14), or describe the claimant's limitations in use of hands/fingers/arms for repetitive tasks (question #15(m)). Also, *of those questions answered, many of the responses were non-sensensical [sic] and not logically responding to the question asked*. For example, question #15(h) asks what percentage of time during an eight (8) hour workday should the legs be elevated. Dr. Riley responded, "at least". Finally, the undersigned finds that *Dr. Riley's responses on the questionnaire are inconsistent with his own treatment records and the record as a whole.* In question #11, Dr. Riley identifies the psychological condition of depression as affecting the claimant's physical condition. Dr. Riley's medical treatment records, however, do not contain a single reference to the claimant being diagnosed with or suffering from depression. Also, on the PRFC form Dr. Riley identifies severe restrictions on the claimant's performance of activity, i.e., the claimant is only able to sit for thirty (30) minutes at a time and cannot walk a single city block without rest or severe pain. His medical treatment records, and the record as a whole, fail to place any restrictions on the claimant's performance of activity. In fact, the record contradicts such an assessment. As previously stated, the claimant expressed that her legs hurt if she does a lot of walking. Further, she testified that she is able to sit for two (2) to (3) hours at a time, "alright".

(R. 26). (emphasis added)

Hammonds does not challenge any of these explicit reasons but merely questions the ALJ's rejection of Dr. Riley's opinions in the absence of an RFC assessment from another treating physician or an examining physician.[4] As this court has instructed previously, the ALJ is not duty

---

[4]Hammonds makes the meritless contention – for the first time in her reply brief – that the ALJ "also failed to accord weight to Dr. Mockler, a treating physician, or Dr. Roberts." *Pl.'s Reply Br.* at 2. Neither Dr. Mockler nor Glen Roberts, D.O. rendered any opinions on Hammonds' functional limitations. The ALJ summarized both Dr. Mockler's treatment notes for Hammonds'
(continued...)

bound to adopt an assessment of a claimant's RFC from any source.[5]

Regarding her spinal stenosis and possible neuro-claudication,[6] Hammond deems the ALJ's omitted reference significant because the condition "would preclude her basic ability to stand or walk for the 'six hours in an eight hour day' as required by the RFC found by the ALJ."[7] Based on his consultative examination on March 26, 2003, Dr. Vyas listed among six diagnostic impressions: "osteoarthritis with degenerative disc disease causing spinal stenosis of lumbar spine and possible neuro-claudation while she stands up. There is no evidence of neurological impairment clinically."[8] The ALJ did include the diagnosed *osteoarthritis and degenerative disc disease* as severe impairments along with back and leg pain.[9] Hammonds did not provide any probative testimony or other evidentiary basis, however, for the ALJ's consideration of her "spinal stenosis with possible

---

[4](...continued)
alleged neuropathy of both upper extremities and Dr. Roberts' report for his treatment on October 28, 2002.(R.22).

[5]*See Mitchell v. Barnhart*, No. 2:04-cv-0081-DRB , *Mem. Op.* at 6  (M.D. Ala. Dec. 28, 2005) ("Mitchell also claims reversible error in the ALJ's failure to obtain an assessment of her RFC by a treating or examining doctor, ...  The court deems it necessary to address this contention only to correct Mitchell's erroneous assertion that a treating or examining doctor's statement is a necessary requirement for the ALJ's formulation of her RFC."), *citing Lewis v. Callahan*; 20 C.F.R. 404.1545; SSR 96-5p, SSR No. 96-8p.

[6]Spinal stenosis is a narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space; symptoms include pain, paresthesias, and neurogenic *claudication* (i.e., limping or lameness accompanied by pain and parethesias in the back, buttocks, and legs that is relieved by stooping. *Dorlands Medical Dictionary* 339, 1576 (28th ed 1994).

[7]*Pl.'s Br.* at 6.

[8]R. 185.

[9]R. 21-24.

neuro-claudication" as a functionally restrictive impairment separate and distinct from the diagnosis stated by Dr. Vyas.[10]  In sum, the court finds that substantial evidence sufficiently undergirds the ALJ's RFC formulation for Hammonds.

### B.    Consideration of Side Effects of Medications

Citing to seven referenced "complain[ts] of 'dizziness' to her physicians on numerous occasions," Hammonds claims reversible error for the ALJ's alleged failure to find that this medication side effect "could render [her] disabled or at least contribute to her disability."[11]  The Commissioner responds that "only three of those reports occurred near or after her alleged onset date"[12] and the "record does not support a finding that [Hammonds] experienced significant side effects from her medications."

Scrutiny of the specified reports discloses no basis for the claimed error:  no correlation is shown between any of Hammond's "dizziness" complaints and her prescribed medications;[13]

---

[10]*See* 20 C.F.R. §404.1512(a)("In general, you have to prove to us that you are ... disabled. Therefore, you must bring to our attention everything that shows that you are... disabled."); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001)(substantial evidence supports ALJ's finding of no disability despite ALJ's failure "to discuss [claimant's] complaints of chronic back pain, [where] there is scant medical evidence to support the complaint...[and the claimant] did not indicate at the hearing that his claims of disability were premised on back pain or that he had functional limitations therefrom."); *Street v. Barnhart*, No. 04-15077, 2005 U.S. App. LEXIS 8938, **15-**18 (11th Cir. May 18, 2005)(finding no error in ALJ's failure to discuss severity of diagnosed mental impairment where claimant, represented by counsel, failed to list any mental impairment in his application for benefits, nor did he testify at the hearing that he suffered from any mental impairments that would prevent him from working).

[11]*Pl.'s Br.* at 7-8, citing R. 118-120, 126, 158, 174, 181.

[12]*Def.'s Br.* at 12, citing R. 158, 174, 181.

[13]Two years prior to Hammonds' onset date, Dr. Karen Mockler reported on a progress note dated June 20, 2000:  "With the hormonal therapy she *sometimes* feels a little dizziness."  (R. (continued...)

pharmacological descriptions of dizziness as a potential side effect of certain medicines is alone insufficient; and Hammonds' testimony did not refer at all to dizziness as a side effect of prescribed medicines.[14]  Consequently, remand is not dictated for the claimed error.[15]

### C.     Exclusive Reliance on Medical Vocational Guidelines

The ALJ relied solely on the Medical Vocational Guidelines ("the Grids") for his non-disability determination grounded on Hammonds' RFC to perform a full range of light work; age, sixth grade education, and literacy; and lack of past relevant work and transferable skills.  The ALJ erred in not securing testimony from a vocational expert, Hammonds contends, since she suffers dizziness, diabetes, hypertension and leg/back pain, as non-exertional impairments.  Because the

---

[13](...continued)
119)(emphasis added). This single reference is insufficient. Similarly inadequate is Dr. Riley's post-hearing opinion in a "Physical Residual Functional Capacity Questionnaire dated March 29, 2004, and submitted to the Appeals Council.  *See Falge v. Apfel*, 150 F. 3d 1320, 1323 (11th Cir. 1998)(When the Appeals Council denies review, the court will only look to evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence). On the Questionnaire actually reviewed by the ALJ ( R. 215), Dr. Riley did not respond to the inquiry for medication side effects.

[14]On a *Disability Report* completed on August 12, 2002, Hammonds does reference her complaint of dizziness as a side effect of a prescribed decongestant, *Atuss* ( R 85), but this prescription is not included on the current medication list submitted at the hearing.  *See* R. 41-42 (Hammonds' relevant testimony).

[15]*See e.g., French v. Massanari*, 152 F. Supp. 2d 1329, 1337-38(M.D. Fla. 2001)(finding ALJ did not have a duty to develop record on whether side effects of claimant's medication contributed to his disability where only evidence in record is claimant's testimony that his pain medication makes him "groggy");  *cf. Epps v. Harris*, 624 F. 2d 1267, 1272-73 (5th Cir. 1980)(remand warranted because incumbent upon ALJ to ascertain whether claimant's prescribed treatment precluded gainful work activity on a regular and continuing basis where his medical records substantiated the necessary treatment regimen as at-home traction treatment for two to three times per day for ten to twenty minutes).

ALJ found that Hammonds "could perform a full range of light work activity and had no non-exertional impairments," the Commissioner argues, he relied properly on the Grids. Undisputed is the controlling law.[16]

Because the ALJ found her diabetes, hypertension, and leg/back pain to be severe impairments, Hammonds argues that he "implicitly found that these nonexertional impairments significantly limit [her] ability to do basic work skills."[17] The ALJ never described these severe impairments as non-exertional impairments, and his decision provides no basis for an implied finding. Though he did not adopt the "exertional" and "non-exertional" phraseology, the ALJ made specific findings on Hammond's functional limitations in each category.[18] After discussing limitations in the

---

[16] Exclusive reliance on the Grids is not appropriate if the claimant *either* is unable to perform a full range of work at a given residual functional level *or* has non-exertional impairments that significantly limit basic work skills. *Phillips v. Barnhart*, 357 F. 3d 1232, 1242 (11th Cir. 2004). Such a non-exertional impairment must evidence "limitations that prohibit a claimant from performing 'a wide range' of work at a given work level,", in which case the ALJ must consult a vocational expert. *Id.,* at 1243*; Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir. 1999); *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995).

[17]*Pl.'s Br.* at 9, citing *Gray v. Massanari*, No. CA 00-0739-CB-C, 2001 WL 530704 (S.D. Ala. May 1, 2001) and *Ezell v. Massanari*, 180 F. Supp. 2d 1306 (S.D. Ala. 2001). After diligent research, this court cannot identify any Eleventh Circuit caselaw that supports this proposition. *See e.g., Phillips*, 357 F. 3d at 1232 (explaining that while ALJ found claimant's Sjogren's syndrome and fibromyalgia to be severe impairments, it is possible claimant suffered exertional limitations that rendered her unable to perform unlimited types of sedentary work and it is also possible these two severe impairments did not affect her exertional capabilities at the sedentary level). The district court caselaw from the Southern District of Alabama, on which Hammonds relies exclusively, is not binding on this court.

[18] A non-exertional impairment is one which is medically determinable and causes a non-exertional limitation of function. *SSR No. 85-15*. A limitation is classified as exertional if it affects the ability to meet the seven strength demands of jobs, i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling. Non-exertional limitations include difficulty functioning due to nervousness or anxiety, difficulty maintaining attention and concentration; difficulty seeing or hearing; difficulty

(continued...)

seven indicators of strength demands which are classified as exertional, he evaluated the evidence for any non-exertional limitations, which include mental limitations, pain limitations and physical limitations not encompassed by these strength demands. The ALJ found no disabling mental limitations or pain limitations, and his consideration of non-exertional physical limitations is apparent from his conclusion that "the record simply fails to support [Hammonds'] assertions of severe functional limitations resulting from any of her diagnosed conditions."[19]

In sum, the court concludes that substantial evidence support the ALJ's step five analysis of Hammonds' functional limitations, both exertional and non-exertional. Because the ALJ found that Hammonds can perform a full range of light work and suffers no non-exertional impairment precluding her ability to engage in a wide range of light work, he did not commit reversible error in relying exclusively on the Grids.

### D. Consideration of New and Material Evidence

The Appeals Council denied review of the ALJ's decision on March 9, 2004, after reviewing and making a part of the record a March 29, 2004 Physical Residual Functional Capacity Questionnaire and a one-page letter dated May 20, 2004, both completed by Hammonds' treating

---

[18](...continued)
tolerating certain environmental settings such as fumes, or difficulty performing manipulative or postural functions such as reaching, handling, stooping, and climbing. *20 C.F.R. §404.1569a*. They also include pain limitations. *See Phillips*, 357 F. 3d at n.11.

[19]R. 25-26; see discussion, *supra,* on the evidentiary record relating to Hammonds complaints of dizziness. Additionally, in a November 10, 2002 treatment note, Dr. Riley assessed her hypertension – noted by Dr. Mockler as a possible cause of her dizziness – as controlled. (R. 127), and in December 2002, he reported that hypoglycemic symptoms, including dizziness, ceased once Hammonds began eating her bedtime snack "like she was supposed to" (R. 174).

physician, Dr. Clark Riley.[20]  Hammonds contends that these post-hearing submissions satisfy the requirements of 42 U.S.C. §405(g) and the applicable caselaw.[21]  Noting that the Appeals Council did, in fact, consider these two pieces of evidence, the Commissioner argues principally that the evidence fails to satisfy the *non-cumulative* prong and the *materiality* prong of the three-pronged standard for remand articulated by the Eleventh Circuit.[22]

Regarding the non-cumulative nature of the records which were indisputably not before the ALJ, the Commissioner contends that the post-hearing submission "is essentially the same as the first [Questionnaire completed by Dr. Riley] with only a few minor changes."[23]  The record before the ALJ did contain opinions by Dr. Riley set forth on an identical Questionnaire form, dated October 8, 2003. The ALJ discredited the initial Questionnaire, in part, because it did include complete responses and the "omitted questions represent some of the most important questions in the questionnaire, as they relate to the assessment of the claimant's physical residual functional capacity", including notation

---

[20]R. 6-9.

[21]*Pl.'s Br.* at 10-13.  For a remand under sentence six of 42 U.S.C. § 405(g), the claimant must establish that (1) there is new, non-cumulative evidence; (2) the evidence is material because it is relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. *Vega v. Commissioner of Social Security*, 265 F. 3d 1214 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).  Failure to establish any of these elements means that remand is not appropriate. *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987).

[22]*Def.'s Br.* at 13-14.  Materiality of the evidence requires "a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d at 459.  An additional implicit requirement of materiality is that the new evidence "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §416.1470(b).

[23]*Def.'s Br.* at 13.

of the clinical and objective findings that support the physician's opinions.[24]  Scrutiny of the March 29, 2004 Questionnaire reflects the same deficiency.

With respect to the *materiality* prong, the Commissioner contends that Dr. Riley's second Questionnaire "was still incomplete and did not include supporting evidence for the conclusions contained within it" and thus, "it would not have changed the result at the administrative level". Hammonds responds that the Questionnaire is material "because it demonstrates the severity of [her] impairments and provides a medical source opinion that she is not able to perform work on a regular continuing basis" and thus, "would likely change the administrative outcome."[25]  Regarding Dr. Riley's post-hearing letter, the Commissioner concedes that the letter "authenticated the two [Questionnaires]" but argues that it "did not provide supporting evidence and was conclusory."[26]

After summarizing his efforts to ascertain the authenticity of the initial Questionnaire, the ALJ concluded: "...although not completely convinced of the veracity of these statements, [ I have] chosen to ignore these stated inconsistencies, overlook [my] concerns regarding the authenticity of the document and instead focus on the inconsistencies contained in the document itself."[27]  Thus, because the ALJ did not rest his rejection of Dr. Riley's assessment on authenticity grounds, the court finds no reasonable possibility for a change in the administrative outcome from the post-hearing letter from Dr. Riley designed to authenticate his initial assessment.  Similarly unpersuasive to modify the administrative outcome would be this doctor's additional opinions in the same letter; absent any

---

[24]R. 26.

[25]*Def.'s Br.* at 13;  *Pl.'s Br.* at 12*; Pl.'s Reply Br.* at 11.

[26]*Def.'s Br.* at 14.

[27]R. 27.

13

newly offered "objective" support – the same deficiency which led the ALJ to ignore previously expressed opinions – Dr. Riley opines that "Hammonds suffers medically determinable impairments", " is disabled" and "is unable to perform any type of employment."

Because Hammonds simply has not established the materiality of the post-hearing submissions, the requested remand for consideration of new evidence is not warranted.

## V.  CONCLUSION

Based on the findings and conclusions detailed in this *Memorandum Opinion*, the court finds the decision of the ALJ supported by substantial evidence and a proper application of the law. Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

Done this 2nd day of February, 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE